IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| BROADREACH HEALTHCARE PTY LTD,  )<br>  )<br>         Plaintiff,  )<br>  )<br>v.  )<br>  )<br>THE UNITED STATES,  )<br>  )<br>         Defendant.  )<br>  ) | No. 24-1719<br><br>Filed: June 27, 2025<br><br>Re-issued: July 8, 2025* |

**OPINION AND ORDER**

Plaintiff BroadReach Healthcare Pty Ltd. ("BroadReach") challenges the Government's use of a funding mechanism—in this case, a cooperative agreement—to provide financial support for activities intended to achieve control of human immunodeficiency virus ("HIV") and tuberculosis ("TB") epidemics in the Mpumalanga province of South Africa. BroadReach alleges that the United States Agency for International Development ("USAID" or "the Agency") unlawfully used a cooperative agreement to solicit goods and services that BroadReach argues should instead be procured under a procurement contract. During the pendency of this lawsuit, USAID cancelled the funding opportunity for which BroadReach submitted an offer. That cancellation renders this action moot. Accordingly, because this Court lacks subject-matter jurisdiction over BroadReach's claims, the Government's Motion to Dismiss is **GRANTED**.

**I.  BACKGROUND**

On February 22, 2024, USAID issued Notice of Funding Opportunity No. 72067424RFA00009 ("the Funding Opportunity") for a program entitled "Achieving and

---

* The Court issued this opinion under seal on June 27, 2025, and directed the parties to file any proposed redactions by July 3, 2025. As the parties did not propose any redactions, the Court reissues the opinion publicly in full.

Sustaining HIV/TB Epidemic Control in the Mpumalanga Province." Admin. R. ("AR") 1137.[1] Its stated goal was to "promote long, healthy lives for the population of the Mpumalanga Province by achieving and sustaining HIV/TB epidemic control." AR 1144. The Funding Opportunity further explained that the program activities would be funded through a cooperative agreement under which USAID intended "to provide up to $190 million in total USAID funding over a five (5) year period." AR 1137.

For statutory authorization, USAID relied on the Foreign Assistance Act of 1961 ("the FAA"), 22 U.S.C. § 2151 *et seq. See* AR 1140. The FAA declares that the "[p]rincipal purpose" of the nation's "bilateral development assistance" to developing countries is to "build and maintain the social and economic institutions necessary to achieve self-sustaining growth" and to "help the poor majority of people in developing countries to participate in a process of equitable growth through productive work . . . with the goal of increasing their incomes and their access to public services which will enable them to satisfy their basic needs and lead lives of decency, dignity, and hope." 22 U.S.C. § 2151-1(a). The FAA authorizes the president of the United States to "furnish assistance, on such terms and conditions" as the president may determine, for "HIV/AIDS, including to prevent, treat, and monitor HIV/AIDS, and carry out related activities." *Id.* § 2151b-2(c)(1). The FAA provides a similar authorization to combat TB. *Id.* § 2151b-3(c).

Before publicizing the Funding Opportunity, USAID memorialized its decision to authorize funding through a cooperative agreement, instead of under other instruments like a procurement contract or a grant. *See* AR 908–09. The Agency explained that it was selecting a

---

[1] On November 8, 2024, the Government submitted the Administrative Record electronically through the Justice Enterprise File Sharing system. *See* Gov't's Notice of Filing Admin. R. at 1, ECF No. 14. Citations to the Administrative Record refer to the bates-labeled page numbers included in the electronic submission.

cooperative agreement—which is not subject to the full competition requirements applicable to procurement contracts—for this Funding Opportunity as authorized under the Federal Grant and Cooperative Agreement Act ("FGCAA"), 31 U.S.C. § 6301 *et seq. See id.* Under the Agency's reasoning, a cooperative agreement was appropriate because USAID would be transferring financial assistance to the recipient of the Funding Opportunity for that recipient to carry out a "public purpose of support or stimulation" authorized by the FAA. AR 909. USAID would not "mandate a particular approach, specific actions, or the delivery of specific services," leaving the recipient—as an "independent entit[y]," not a "direct agent of the U.S. Government"—to implement its own programs aimed at controlling HIV and TB. AR 913. USAID further explained that the Government's interests would be "best served by supporting and being substantially involved in the program, but not by directly controlling it." *Id.* The "assistance instrument" would support "South Africa's efforts to achieve and sustain HIV epidemic control and eliminate [tuberculosis]" and would enhance the recipient's "credibility" locally due to its perceived independence from "prescriptions" of the United States Government. *Id.*

In sum, because (1) the principal purpose of the transaction was to transfer financial assistance to a recipient to carry out the FAA's policies, (2) the transaction would not acquire property or services for the direct benefit of the United States Government, and (3) the Agency expected to remain substantially involved in carrying out the activity, it recommended selecting a cooperative agreement under the FGCAA. AR 913–14; *see also* 31 U.S.C. § 6305.

BroadReach is a "for-profit social enterprise," Pl.'s Mot. for J. on Admin. R. at 10, ECF No. 16, based in South Africa and operating with "two decades of healthcare expertise with technology-enabled solutions to improve health outcomes and foster more sustainable health systems," AR 1003. The firm submitted a concept paper for phase one of USAID's Funding

Opportunity, which laid out a two-phase approach to selecting a recipient for the cooperative agreement. *See* AR 999–1006, 1137. The concept paper for the first phase was due by April 14, 2024. *See* AR 1137. Having not received a response from the Agency to its concept paper, on September 4, 2024, BroadReach asked USAID whether it had any updates, indicating that it had "heard that at least one other bidder" had been asked to submit materials for phase two of the Agency's Funding Opportunity. AR 1196. USAID responded that the selection was ongoing and that it was unable to answer specific questions. *Id.*

BroadReach filed a protest with the United States Government Accountability Office ("GAO") on September 26, 2024. *See* AR 1294. BroadReach alleged in one of its counts that USAID violated the FGCAA by selecting a cooperative agreement instead of a procurement contract for the solicitation of responses to its Funding Opportunity. *See* AR 1298. GAO dismissed the protest because BroadReach failed to file its protest before the phase-one deadline for concept papers and because BroadReach failed to show its claim constituted a "significant issue" sufficient to overcome the GAO's timeliness rules. AR 1472–73.

On October 22, 2024, BroadReach sued the United States of America in this Court. *See* Pl.'s Compl., ECF No. 1. It alleges that USAID violated the FGCAA by selecting a cooperative agreement, and not a procurement contract, as the mechanism for the Funding Opportunity. ECF No. 1 ¶¶ 39–46. It also alleges that USAID's choice to use a cooperative agreement was arbitrary and capricious under the Administrative Procedure Act. *See id.* ¶ 47. BroadReach filed its Motion for Judgment on the Administrative Record on November 29, 2024, *see* ECF No. 16, and the Government moved to dismiss and cross-moved for judgment on December 27, 2024, *see* Gov't's Mot. to Dismiss & Cross-Mot. for J. on Admin. R., ECF No. 20. The parties appeared for argument on February 20, 2025. *See* Min. Entry (Feb. 20, 2025).

However, on March 26, 2025, before the Court issued its merits opinion, USAID cancelled the Funding Opportunity. *See* Attach. 1 to Gov't's Status Report, ECF No. 31-1. The Agency explained that it had issued updated policy guidance pausing foreign assistance funding.[2] *See id.* at 1. The Agency further explained that, because the Funding Opportunity had not been awarded prior to the beginning of the funding pause, it was not eligible for a waiver or exception under revised rules from the United States Department of State. *See id.* Additionally, the "nature" of the Funding Opportunity's "scope" rendered it ineligible for any other exceptions outlined in the relevant guidance. *See id.*

On April 10, 2025, the Government moved to dismiss BroadReach's action under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). *See* Gov't's Mot. to Dismiss, ECF No. 32. The Government argues that USAID's cancellation of the Funding Opportunity renders BroadReach's protest moot. BroadReach opposes dismissal. *See* Pl.'s Resp. to Gov't's Mot. to Dismiss, ECF No. 33. The motions are ripe for decision.

## II. LEGAL STANDARDS

Apart from establishing the Court's bid protest jurisdiction under the Tucker Act, 28 U.S.C. § 1491(b)(1), a plaintiff must also demonstrate that its claim satisfies Article III's case-or-controversy requirement.[3] U.S. CONST. art. III, § 2. "[I]t is axiomatic that a federal court may not address 'the merits of a legal question not posed in an Article III case or controversy,'" and that a live dispute must exist at all stages including through appellate review. *eSimplicity, Inc. v. United*

---

[2] The cancellation references several guidance documents from Agency executives as well as rules for new foreign assistance-funded obligations issued by the United States Department of State. *See* ECF No. 31-1.

[3] Although this Court operates under Article I of the Constitution, it nonetheless applies the same justiciability doctrines enforced by other federal courts. *See Associated Energy Grp., LLC v. United States*, 131 F.4th 1312, 1317 (Fed. Cir. 2025).

*States*, 122 F.4th 1373, 1376 (Fed. Cir. 2024) (alteration in original) (internal quotations omitted) (quoting *Aqua Marine Supply v. AIM Machining, Inc.*, 247 F.3d 1216, 1219 (Fed. Cir. 2001)). The mootness doctrine exists to ensure that federal courts address only those controversies embodied by concrete disputes between litigants, consistent with the Constitution's system of separated powers. *See Flast v. Cohen*, 392 U.S. 83, 97 (1968); *see also North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (holding that the mootness doctrine derives from Article III of the Constitution (quoting *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964))). Indeed, "it is quite clear that the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Flast*, 375 U.S. at 96 (quotation omitted).

"When, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should generally be dismissed" as moot. *Chapman L. Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007). The Government bears the burden to show that agency action has mooted the case. *See AccelGov, LLC v. United States*, 166 Fed. Cl. 606, 610 (2023). To do so, it must show that the agency has not merely voluntarily ceased the challenged practice at issue. *See Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 661–62 (1993). Rather, it must demonstrate that there is no "reasonable expectation" that the alleged violation will recur and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Deakins v. Monaghan*, 484 U.S. 193, 200 n.4 (1988) (explaining that the voluntary-cessation exception to the mootness doctrine did not apply where a plaintiff might seek to assert similar claims "arising out of other events," a possibility that proved too speculative to be "sufficiently real and immediate to show an existing controversy" (quoting *O'Shea v. Littleton*,

414 U.S. 488, 496 (1974)).

"The mootness of a case is properly the subject of an RCFC 12(b)(1) motion." *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 328 (2012). Under RCFC 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Where an intervening circumstance bears on the Court's continuing jurisdiction, the Court is not limited to allegations in the complaint and should consider post-filing evidence. *See Acetris Health, LLC v. United States*, 949 F.3d 719, 726 (Fed. Cir. 2020).

### III. DISCUSSION

The Government has met its burden to show that this case is moot and that the voluntary-cessation exception to mootness does not apply. The funding mechanism at issue is cancelled, and, per the evidence the Government submitted, it has no possibility of being reinstated in its current form. Any future opportunity to bid on a cooperative agreement related to the activities covered by the Funding Opportunity is, as of now, purely speculative, meaning that no live question or controversy currently exists between the parties.

**A.    The Dispute Between the Parties Is Now Moot.**

A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "It is well settled that 'a party's voluntary action can render moot a case or controversy.'" *eSimplicity*, 122 F.4th at 1376 (quoting *Kaw Nation v. Norton*, 405 F.3d 1317, 1322 (Fed. Cir. 2005)). In bid protests, the expiration or cancellation of a solicitation or contract award generally renders the dispute between the parties moot. *See, e.g., id.*; *Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1378 (Fed. Cir. 2022); *Bitscopic, Inc. v. United States*, 166 Fed. Cl. 677, 697–98 (2023); *Madison Servs., Inc. v. United States*, 90 Fed. Cl. 673, 680 (2009).

Here, the Agency cancelled the Funding Opportunity pursuant to revised policies issued under the new presidential administration. *See* ECF No. 31-1. A global pause and review of foreign-aid funding has affected broad swaths of USAID activities. Per the evidence the Government submitted, the pause reflects updated policy guidance concerning foreign assistance obligations. *See* Gov't's Reply in Supp. of Mot. to Dismiss at 6, ECF No. 34; *see also* Exec. Order No. 14169, 90 Fed. Reg. 8619 (Jan. 20, 2025). Although a waiver process exists, the Government's evidence establishes that USAID did not grant the project at issue a waiver under the State Department's waiver and exception processes because the Funding Opportunity was not awarded prior to the funding pause and did not meet any other exceptions outlined in the relevant guidance. *See* ECF No. 31-1.

Like in *eSimplicity*, "an intervening circumstance has deprived [BroadReach] of a personal stake in the outcome of the lawsuit." 122 F.4th at 1376 (quoting *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (cleaned up)). That intervening circumstance, which is unrelated to the specific legal dispute over funding mechanisms at issue in this lawsuit, is an agency-wide pause and review of foreign-aid obligations that resulted in the Funding Opportunity's cancellation. Accordingly, "'the questions originally in controversy between the parties are no longer at issue' because those questions concern the now-[cancelled]'" solicitation. *Id.* (quoting *Chapman L. Firm*, 490 F.3d at 939).

Much of BroadReach's opposition to dismissal here asks for relief that would necessarily take the form of a quintessential advisory opinion. BroadReach argues that it has "frame[d]" this case as a challenge to the government-wide practice of "violating the FGCAA by improperly using cooperative agreements to engage third parties to deliver services to ultimate beneficiaries, even though the FGCAA requires the use of contracts in these 'third-party situations.'" ECF No. 33 at

2. But without a live dispute arising from an alleged procurement involving these parties, BroadReach lacks a "legally cognizable interest" in the outcome of this litigation. *Powell*, 395 U.S. at 496. Because this Court's jurisdiction extends only to the specific procurement action being challenged, *see* 28 U.S.C. § 1491(b)(1), BroadReach can receive no possible relief concerning an alleged procurement that no longer exists. Without that continuing interest or any possible relief, the lawsuit is moot.[4] *See Powell*, 395 U.S. at 496.

BroadReach also emphasizes that dismissal would unfairly allow the Government to avoid paying the bid preparation and proposal costs, as well as fees under the Equal Access to Justice Act ("EAJA"), to which BroadReach is allegedly entitled. *See* ECF No. 33 at 8–9. But a request for costs under § 1491(b)(2) cannot save BroadReach's claims from mootness. *See S.K.J. & Assocs., Inc. v. United States*, 67 Fed. Cl. 218, 227 (2005) ("Cases from this court have held that a contractor cannot seek bid preparation and proposal costs based upon a solicitation and award that have been cancelled."); *CCL Serv. Corp. v. United States*, 43 Fed. Cl. 680, 690 (1999) ("[A] decision on the merits of the award must be made prior to the award of bid preparation and proposal costs."); *Utech Prods. v. United States*, 150 Fed. Cl. 674, 679 (2020) (holding that the court has no power to award bid preparation and proposal costs when a solicitation has been cancelled and a decision on the merits of the award is no longer possible). Additionally, it is well settled that "the availability of EAJA fees is not an appropriate consideration for a court when determining

---

[4] To be clear, the Court does not decide the merits question at issue in this case, *i.e.*, whether USAID's Funding Opportunity was improperly solicited as a cooperative agreement and should have been conducted as a procurement under the FGCAA. Any language framing the Funding Opportunity as a "procurement" or "alleged procurement" serves only to illustrate that, even assuming its legal theory is correct, BroadReach no longer has a viable interest in pursuing this action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89–90 (1998) (explaining that plaintiffs may satisfy justiciability requirements if a court accepts, for the jurisdictional analysis, a plaintiff's interpretation of the laws on which its complaint relies).

how to dispose of a case." *Chapman L. Firm*, 490 F.3d at 939; *see Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("[A]ttorney's fees [are], of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."). If the contrary were true, any request for bid proposal costs or attorney's fees in a bid protest could defeat long-standing mootness principles. Since the agency action that led to the parties' legal dispute is no longer in effect, and thus the "questions originally in controversy between the parties are no longer at issue," the case must be dismissed as moot. *Chapman L. Firm*, 490 F.3d at 939.

    **B.**    **The Voluntary-Cessation Exception to the Mootness Doctrine Does Not Apply.**

Courts recognize a few exceptions to the mootness doctrine, including, as relevant here, the voluntary-cessation exception. Under that exception, BroadReach argues that the Government cannot automatically moot its case simply by ceasing its "unlawful conduct," at least not without conceding that BroadReach's interpretation of the FGCAA is correct or rescinding relevant agency guidance that BroadReach believes governs the use of cooperative agreements. ECF No. 33 at 6–7. Here, however, the exception does not apply.

Under most formulations of the voluntary-cessation exception, a party claiming that its voluntary compliance has mooted a claim must show that (1) there is "no reasonable expectation" that "the alleged violation will recur" and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631; *see Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). The exception reflects the concern that a defendant will "stop [his unlawful action] when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.*

In this case, USAID formally cancelled the Funding Opportunity, which constitutes the entire basis of BroadReach's dispute with the Government. The finality of the action proves that

10

there is no reasonable expectation—indeed, "no expectation at all," *Madison Servs.*, 90 Fed. Cl. at 680—that USAID will resume soliciting concept papers for HIV and TB programming under the Funding Opportunity. Indeed, the agency-wide nature of USAID's pause of foreign assistance funding and the fact that the Funding Opportunity did not qualify for continuation under the waiver and exception processes established by the State Department makes it clear that recission of the cancellation and/or resumption of the Funding Opportunity is not reasonably expected. *See* ECF No. 31-1. Thus, the Government has succeeded in showing that there is no chance that the allegedly wrongful conduct in this case will recur because the challenged funding instrument is irrevocably cancelled.

The Government has also shown that the cancellation completely eradicated the effects of the alleged violation. *See Davis*, 440 U.S. at 631. The Court need look no further than the substantive relief BroadReach seeks. Any order issued by the Court enjoining performance of an award on the Funding Opportunity, declaring the Funding Opportunity to violate the FGCAA, or requiring USAID to rescind the Funding Opportunity and conduct it as a procurement contract would be meaningless. *See* ECF No. 1 at 14. The cancellation itself ensures there will be no award or performance of the cooperative agreement solicited in the Funding Opportunity, divests the allegedly unlawful agency action of any legal effect, and rescinds the Funding Opportunity. *See Harris Patriot Healthcare Sols., LLC v. United States*, 95 Fed. Cl. 585, 593 (2010) ("[T]here is no [agency decision] the court could declare invalid or enjoin.").

And this Court has been clear that a plaintiff cannot avoid dismissal for mootness by "speculating" as to what the Government might do in the future, especially where an agency's cancellation was "an independent agency action" that "displaced" the allegedly improper funding instrument. *Madison Servs.*, 90 Fed. Cl. at 679–80; *see also MVL USA, Inc. v. United States*, No.

11

24-1057, 2025 WL 1318988, at *19 (Fed. Cl. May 6, 2025) (finding that a plaintiff's "speculative arguments f[e]ll short" of demonstrating a reasonable expectation that statutory violations would recur).

BroadReach's speculation about how the Government might conduct similar funding activities in the future—let alone that it will purportedly harm BroadReach in the same manner—cannot save its claims from dismissal. *See Already*, 568 U.S. at 92; *see Brookfield Relocation, Inc. v. United States*, 113 Fed. Cl. 74, 78–79 (2013) (holding that, where there was no "final agency action" to challenge beyond a cancellation, the plaintiff's challenge was both moot and unripe); *cf. Indus. for the Blind, Inc. v. United States*, 120 Fed. Cl. 132, 135 (2015) (holding that an agency's cancellation of solicitations eliminated "any live controversy between the parties"). "To accept plaintiff's invitation to prejudge the agency's future decision-making would impermissibly entangle the court in administrative policy and subject [the agency] to improper judicial interference." *Madison Servs.*, 90 Fed. Cl. at 679. Indeed, any "protest of the government's possible future solicitation" related to the program activities at issue in this bid protest "is not ripe." *Advanced Simulation Tech. Inc. v. United States*, 173 Fed. Cl. 587, 594 (2024). To the extent BroadReach seeks judgment that *any* similar future funding opportunity that seeks a cooperative agreement to support HIV and/or TB activities is unlawful, its argument depends upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985); *see Advanced Simulation Tech.*, 173 Fed. Cl. at 595 ("With the cancellation of the . . . contract, the complaint is now based on future events that may not occur."). Such considerations underscore why BroadReach's argument here, in this case, is moot: the allegedly unlawful action has been rescinded, and a challenge to any hypothetically similar action is, at this point, merely speculative. There is no reasonable certainty

that USAID will initiate a substantially similar funding opportunity in the future, and, more importantly, there is no reasonable certainty that BroadReach will have an opportunity to submit an offer in response to such an opportunity.

Moreover, there is no evidence that USAID's cancelling the Funding Opportunity was motivated by a desire to dismiss the instant case by manipulating the Court's jurisdiction. *See* ECF No. 34 at 5–6 (quoting *Pub. Citizen v. Fed. Energy Regul. Comm'n*, 92 F.4th 1124, 1128 (D.C. Cir. 2024)); *see also Monk v. Tran*, 843 F. App'x 275, 280 (Fed. Cir. 2021) (holding voluntary-cessation exception did not apply where agency action that mooted the case was made "as a matter of regular order" (citing *DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974))). BroadReach apparently takes issue with the timing of the cancellation decision, claiming that although relevant policy guidance was issued in late January 2025, the Funding Opportunity was not cancelled until late March 2025. *See* ECF No. 33 at 7. But the Government's evidence explains why USAID may have taken roughly two months to reach a cancellation decision. Consistent with the Executive Order, which required USAID to review each of its foreign assistance programs, and following updated guidance issued as late as March 2025, USAID reviewed the Funding Opportunity and determined it did not meet the necessary qualifications for a waiver or exception. *See* ECF No. 31-1. Such a timeline (well within the 90-day period contemplated by the Executive Order) hardly suggests that USAID was not operating in the normal course or demonstrates the Agency's action was intended to avoid a decision resolving the merits here. It instead suggests the Agency conducted an internal review pursuant to its new policy guidelines and made a final cancellation decision upon the completion of that review.

### IV. CONCLUSION

Because the underlying dispute between the parties is moot, the Court lacks subject-matter

jurisdiction over BroadReach's claims. Accordingly, the Court **GRANTS** the Government's Motion to Dismiss (ECF No. 32) and **DENIES AS MOOT** the parties' Motions for Judgment on the Administrative Record (ECF Nos. 16, 20). This matter is **DISMISSED** under RCFC 12(b)(1) for lack of subject-matter jurisdiction. The Clerk is directed to enter judgment accordingly.

      **SO ORDERED**.


Dated: June 27, 2025                      */s/ Kathryn C. Davis*
                                            KATHRYN C. DAVIS
                                            Judge